UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEVIN GOLDSTON                                              CIVIL ACTION

VERSUS                                                      NO. 06-2163

TERRY L. TERRELL, WARDEN                                    SECTION "C"

### ORDER AND REASONS

Before the Court is a petition for habeas corpus by Kevin Goldston ("Petitioner"), filed pursuant to 28 U.S.C. § 2254. Petitioner is seeking relief from his November 12, 2002 conviction for aggravated burglary under LA. REV. STAT. § 14:60, for which, after a multiple bill hearing, he was sentenced to twenty (20) years in prison, without the benefit of parole, according to the Louisiana Habitual Offender Law, LA. REV. STAT. § 15:529.1. Petitioner is currently incarcerated at the Allen Correctional Center in Kinder, Louisiana. As grounds for relief, Petitioner claims that there was insufficient evidence to support his conviction. For the reasons set forth below, this petition is **DENIED WITH PREJUDICE**.

### I. CASE HISTORY

The state filed a Bill of Information against Petitioner on May 17, 2002, charging him with aggravated battery in violation of LA. REV. STAT. § 14:60. State Rec., Vol. 1, Bill of Information. Subsequently, Petitioner filed motions to suppress evidence and a statement. State Rec., Vol. 1, Minute Entry. A hearing on the motions was held on August 13, 2002; the trial

1

court denied Petitioner's motions. *Id.* Following a trial on November 12, 2002, Petitioner was convicted of aggravated burglary. On November 21, 2002, Petitioner was sentenced to thirteen (13) years at hard labor. State Rec. Vol. 1, Minute Entry. Following a Multiple Bill hearing on December 18, 2002, the Petitioner was adjudged a multiple offender; the court set aside the original prison term, and sentenced Petitioner to twenty (20) years imprisonment. *Id.* The Louisiana Court of Appeal for the Fifth Circuit summarized the facts of the case as follows:

> Ms. Gail Bowlin, an addiction therapist from Bloomington, Illinois, testified that in March of 2002 she and her fourteen-year-old daughter were spending a week in New Orleans at the Avenue Plaza Hotel on St. Charles Avenue. On March 28 about 6:30 p.m., Ms. Bowlin left her Toyota in front of the hotel for valet parking. She and her daughter went upstairs. She decided to go out for a sandwich; when she returned to the hotel about 7 p.m., she noticed her car was still on the street where she had left it. She went to her room and began packing because the two were leaving early the next morning. Ms. Bowlin's daughter, Rachael, was watching television when Ms. Bowlin heard a knock on the door and a man's voice announcing, "I'm from security. Your Toyota has been damaged."
>
> She cracked the door open a few inches and asked the man standing there what he meant. He did not respond. She told him she would go to the front desk for information. When she attempted to close the door, he pushed it open and forced his way into the room, saying, "I'm from maintenance. I'm here to fix your toilet. Your toilet is broken, and the front desk sent me up." Ms. Bowlin knew that nothing was wrong with the toilet, and she asked the man for identification. When he could not produce any, she told him that she would call the front desk. The man responded that he would call and walked over to the telephone, but instead of calling, he ripped the cord from the wall.
>
> Immediately, Ms. Bowlin screamed to her daughter to run. Both women tried to leave the room; however, the man grabbed Ms. Bowlin around her shoulders and Rachael by her tank top. The tank top ripped and Rachael's back was scratched by his nails. Ms. Bowlin screamed for help, and a man and his son from a nearby room came in. The intruder released Ms. Bowlin, who had pinched him on his lower lip, but he was still holding Rachael. The neighbor told his son to call security and tried to get between the intruder and Rachael. At that point another couple appeared and began questioning the intruder. He told them he was part of the maintenance crew and was there to fix the toilet. He then ran down the hall.
>
> Ms. Bowlin explained that her daughter was not in court to testify because she was still too traumatized by the incident to talk about it. She also stated under

cross-examination that she did not know if the intruder took anything from her room. However, the wedding ring she was wearing during the altercation was found in the hotel hall about twenty feet from her room by a detective.

Mr. Robert Payne of Skokie, Illinois, was vacationing in New Orleans with his family on March 28, 2002. He, his wife, and two children were in their suite at the Avenue Plaza Hotel about 7 p.m. when he heard screams coming from across the hall. When he opened his door, he looked diagonally across the hall and saw a young girl trying to escape the grasp of someone within her room. She was being pulled backward by the strap of her blouse.

Mr. Payne ran into her room and put his hands on the man holding her and demanded he release the girl. The man told Mr. Payne that he was from maintenance and this was all a "misunderstanding." Mr. Payne responded by repeating that he should let go of the girl. The man then said that he was there to fix the toilet, and when Mr. Payne again told him to release the girl, the man did so. The girl collapsed in the hallway.

Mr. Payne, who had had maintenance workers in his room, noticed that the intruder did not have on the Avenue Plaza uniform; in fact he was wearing a T-shirt wrong side out and black pants. The intruder announced that he was going downstairs to talk with his supervisor, and Mr. Payne warned him that someone in his family had already called downstairs. Mr. Payne asked Ms. Bowlin and her daughter if they were okay, and both answered affirmatively. He then followed the intruder into the hall and saw him get on the elevator. Ms. Bowlin and Rachael went to Mr. Payne's room to calm down, and he saw then that Rachael's back was scratched. Early the next morning, police officers showed Mr. Payne a photo lineup, and he selected Kevin Goldston's picture.

Mr. Charles Canedo, the Director of Housekeeping at the Avenue Plaza Hotel, testified that he received a telephone call on March 28 from police officers who wanted him to view a videotape to determine if a person on the tape was one of his employees. Mr. Canedo recognized Kevin Goldston and testified that Mr. Goldston was wearing the same clothes he had on earlier that day when he left work. Mr. Goldston had been working at the hotel for only three or four weeks. Mr. Canedo explained that the hotel policy is that no employee is to return to the hotel after the end of his workday. On March 28 Mr. Goldston worked from 8:39 a.m. until 2:10 p.m.; his job involved collecting dirty linen and distributing clean linen as well as hauling trash. He would never be expected to go to a room to clean it. Mr. Goldston did not come to work on March 29, and Mr. Canedo did not remember if Mr. Goldston quit or was fired. However, when he was shown a document verifying Mr. Goldston's dismissal for violating company policy, Mr. Canedo recognized the name of the Human Resources Director as authorizing the action.

> Sergeant Andre Carter was called to the Avenue Plaza Hotel on the evening of March 28 where he met with Ms. Bowlin, her daughter, and Robert Payne. He also spoke to a manager at the hotel who told him that the halls were monitored by video cameras. The sergeant watched the videotape with some of the employees who told him that the man pictured on the video worked in housekeeping. Sergeant Carter then called the head of housekeeping to view the tape, and he identified Kevin Goldston as the man depicted on the tape.
>
> The next morning the sergeant showed a photo lineup to Mr. Payne who selected the defendant's picture. Ms. Bowlin and her daughter left New Orleans at 5 a.m. on March 29, and so the sergeant mailed photo lineups to each of them. Neither was able to identify the defendant. The sergeant was asked if the defendant was wearing glasses in the videotape showing him walking toward the victims' room and he answered affirmatively. After the incident, glasses-which did not belong to either of the victims-were found in their room.
>
> When the sergeant spoke to Mr. Goldston after he was arrested, the sergeant read him his Miranda rights, and Mr. Goldston made a statement in which he stated that he had gone to a room on the eighth floor of the hotel and asked a guest if she needed any service. She opened the door, "looked at me like I was up to something," and began screaming. When asked if he went to the room as part of his job, Mr. Goldston answered negatively. The sergeant noticed that Mr. Goldston had a cut on his lip and asked how it occurred; Mr. Goldston answered that his girlfriend did it. He denied pulling the telephone from the wall. When the sergeant was asked if Mr. Goldston committed a theft in the course of this incident, he answered that he did not.

*State v. Goldston*, 868 So.2d 196, 198-200 (La.App 4 Cir. 2004). The Louisiana Fourth Circuit Court of Appeal affirmed Petitioner's conviction and sentence on February 11, 2004. *Id.* at 198. Generally, Louisiana Supreme Court Rule X § 5 allows thirty (30) days to seek review of a judgment of a Court of Appeal. Petitioner did not seek such review with the Louisiana Supreme Court within the thirty (30) day time period. However, Petitioner was granted an additional sixty (60) days from March 3, 2005 to file a Writ of Certiorari with the Louisiana Supreme Court. State Rec., Vol. 3, Letter of the Louisiana Supreme Court. Petitioner filed his Writ of Certiorari with the Louisiana Supreme Court on April 6, 2005. Petitioner's application for review was denied without comment by the

state Supreme Court on February 17, 2006. *State ex rel. Goldston v. State*, 924 So.2d 1004 (La. 2006). Petitioner did not file an application for post-conviction relief. Finally, Petitioner filed the instant *habeas* petition on April 10, 2006.[1]

## II. PROCEDURAL REVIEW

### A. Custody Requirement

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a). Physical incarceration satisfies the custody requirement. *See e.g., Maleng v. Cook*, 490 U.S. 488, 491 (1989). Here, Petitioner is incarcerated at the Allen Correctional Center in Kinder, Louisiana. Fed. Rec. Petition for Habeas Corpus, p. 1. Thus, Petitioner is in custody for the conviction he is attacking. Accordingly, one basis of this Court's subject matter jurisdiction over Petitioner's claim for relief is satisfied.

### B. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained. Petitioner is incarcerated at the Allen Correctional Center in Kinder, Louisiana, which is in Allen Parish, a parish that falls within the Western District of Louisiana according to 28 U.S.C. § 98(c).  However, Petitioner was convicted and sentenced in Orleans Parish,

---

[1] A *pro se* petitioner files his or her petitioner for prescriptive purposes on the date that it is signed.  *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also, United States v. O'Kaine*, 971 F. Supp. 1479, 1480 (S.D. Ga. 1997) (inferring that the signature date on the movant's 28 U.S.C.§ 2255 motion to vacate was the date the movant deposited the motion with prison officials for forwarding to the court.)

which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana. Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

*C. Timeliness*

The State asserts that the petition is untimely; upon review, this Court agrees. The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a *habeas* petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes "final."[2] The Supreme Court has ruled that "finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

Furthermore, "a properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place

---

[2] 28 U.S.C.§ 2254(d) provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000). Finally, out of an abundance of caution, this Court construes any tolling ambiguities in favor of a petitioner. *See e.g., Navarre v. Stalder,* 2007 WL 1702774, *5 (E.D.La. 2007).

The Fifth Circuit has held, "[w]e find no reason to look to state law to determine when a state conviction becomes final for the purposes of § 2244(d)(1)(A)." *Roberts*, 319 F.3d at 694. Indeed, "[t]he language of § 2244(d)(1)(A) provides that a decision becomes final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* (internal quotations omitted). Specifically, the *Roberts* court held, "[i]f the defendant stops the appeal process before [applying to the United States Supreme Court for a Writ of Certiorari], the conviction becomes final when the time for seeking further direct review in the state court expires." *Id.*

Additionally, the Fifth Circuit has addressed the issue of whether an out-of-time filing for a supervisory writ with the Louisiana Supreme Court has any impact on either the commencement or the running of the AEDPA's limitations period. *McGee v. Cain*, 104 Fed.Appx. 989, 991 (5th Cir. 2004) (relying on *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004) for the proposition that an out-of-time petition for discretionary review tolls the AEDPA's statute of limitations, but does not require a federal court to restart the AEDPA's limitations period altogether). In this case, the Louisiana Court of Appeal affirmed Petitioner's sentence on February 11, 2004. Petitioner had "within thirty days of the mailing of the notice of the original judgment of the court of appeal" to make his

application to the Louisiana Supreme Court. LA.Supr. Ct. R. X, § 5(a). Yet, Petitioner did not file his Writ with the Louisiana Supreme Court until April 6, 2005.

In this case, Petitioner allowed the time for seeking further direct review to expire, and thus, the plain language of 28 U.S.C. § 2244(d)(1)(A) establishes that AEDPA's one-year limitations period started to run on March 13, 2004, which was "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003). Stated another way, AEDPA's limitations period commenced on March 13, 2004 because Petitioner did not appeal to the Louisiana Supreme Court within thirty (30) days of February 11, 2004. Petitioner was granted additional time to file a Writ with the Louisiana Supreme Court, but Petitioner did not submit that application for relief until April 6, 2005. Thus, more than a full year of untolled time passed from the date Petitioner's sentence and conviction became final (March 13, 2004) and the tolling of the AEDPA's statute of limitations (April 6, 2005). Therefore, the *habeas* petition is untimely filed under the AEDPA. 28 U.S.C.§ 2254(d).

The Court also notes that the United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, in rare and exceptional circumstances, be equitably tolled. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (internal quotes and citations omitted). This Court knows of no reason that would support equitable tolling of the statute of limitations regarding Petitioner's federal application for *habeas corpus* relief. Accordingly, this Court is barred by AEDPA's statute of limitations

from entertaining Petitioner's request for relief. However, in the interests of judicial efficiency, the Court exercises its discretion and also finds petitioner's claim to be without merit.

### *D. Exhaustion*

Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). The exhaustion requirement is now codified by AEDPA, which provides, *inter alia*, that habeas relief "shall not be granted unless it appears that . . . (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.§ 2254(b)(1). For exhaustion, the entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a "habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claim) (internal quotations omitted) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982).

Here, the State did not address the issue of exhaustion. The Court finds that Petitioner's claims are exhausted as required by AEDPA. As listed above, Petitioner presents a single claim for relief in his federal *habeas* petition: insufficient evidence to support the conviction. This claim was presented to the Louisiana Supreme Court on direct appeal using nearly identical language to the claim as it is presented to this Court.[3]

---

[3] *Compare* State Rec. Vol. 3, Application for Writ of Certiorari, pp. 8-16 *with* Fed. Rec., *Habeas* Petition, pp. 2-9.

Accordingly, petitioner has satisfied AEDPA's exhaustion requirement. *See Moore v. Quarterman*, 491 F.3d 213, 220 (5th Cir. 2007).

### III. STANDARD OF REVIEW

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for *habeas* petitions. The statute mandates that when a state court has adjudicated a claim on the merits, pure questions of law, as well as mixed questions of law and fact, are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). But, questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law, and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

Yet, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable

10

determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

IV. PETITIONER'S CLAIM

**1. Insufficient Evidence to Convict**

Petitioner claims that there was insufficient evidence to convict him of aggravated burglary. Fed. Rec., *Habeas* Petition, pp. 2-9. Specifically, Petitioner argues that "the prosecution presented sufficient evidence to establish each and every element except proof that he had criminal intent to commit a felony or theft." *Id.* at 9. Petitioner avers that the prosecution failed to show that Petitioner had the *mens rea* necessary to prove a specific criminal intent. *Id.* at 6. And thus, Petitioner asserts he could only have been found guilty of unauthorized entry of an inhabited dwelling. *Id.* at 4.

As an initial matter, the Court notes that a claim of insufficient evidence presents a mixed question of law and fact. *Taylor v. Day*, 1999 WL 195515, at *3 (E.D.La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir.2000). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. The well established federal standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir.2000).

Petitioner was convicted of aggravated burglary under LA. REV. STAT. § 14:60. Under Louisiana law,

11

> Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender, (1) is armed with a dangerous weapon; or (2) after entering arms himself with a dangerous weapon; or (3) commits a battery upon any person while in such place, or in entering or leaving such place.

LA. REV. STAT. § 14:27. Additionally, in Louisiana "intent is a question of fact, but it need not be proved as a fact. It may be inferred from the circumstances." *State v. Francis*, 715 So.2d 457, 561 (La. App. 4 Cir. 1998).

Petitioner alleges that he did not have, and did not develop, an intent to commit a felony or theft in the hotel room. Petitioner also argues that proof of his unauthorized presence is insufficient to establish an intent to commit a felony or theft. However, "[t]he trier of fact has broad discretion to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Green*, 160 F.3d at 1047 (quoting *Jackson*, 443 U.S. at 319) (internal quotations omitted).

The Louisiana Court of Appeals for the 4th Circuit addressed this issue during Petitioner's direct appeal, finding sufficient evidence to support the conviction:

> In the case at bar, the evidence indicates that the defendant entered an inhabited dwelling without authorization, he pulled the telephone from the wall, he would not leave when so ordered, and he committed batteries on the two victims. Also, the victim's wedding ring which she was wearing prior to the incident was found in the hotel hall about twenty feet from her room after the altercation.

*State v. Goldston*, 868 So.2d 433, 196, 202 (La. App. 4 Cir. 2002).

In this case, Petitioner forced his way into an occupied hotel room, battered two hotel guests, and then fled when neighboring guests intervened. Based on the evidence presented at trial, it was reasonable from the circumstances surrounding the incident for the jury to have drawn the conclusion that Petitioner had the intent to commit a felony or

12

theft. Indeed, in the ordinary course of human experience, an unauthorized entry into an inhabited dwelling often results in battery or theft. Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Donahue*, 231 F.3d at 1004. Accordingly, this Court cannot find that the decision reached by the state court to uphold Petitioner's conviction was contrary to, or an unreasonable application of federal law under *Jackson*. Consequently, this claim is dismissed.

### V. CONCLUSION

Having considered the complaint, the record, and the applicable law, it is determined that Petitioner's claim for relief is untimely and without merit. Accordingly, it is **ORDERED** that the petition of Kevin Goldston be **DENIED WITH PREJUDICE**. Judgment will be entered accordingly.

New Orleans, Louisiana this 7th day of January, 2008.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE